IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: DISCORD ACCOUNT FOR USER ID 987085077043376218, ALSO IDENTIFIED BY THE USERNAME "CALLDUVIDE#1772" | Case No.   6:23mj17 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Mary Echols, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with a Discord account for User ID 987085077043376218, also identified by the username "callduvide#1772" (hereafter referred to as "the SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Discord, Inc., located at 444 De Haro Street, Suite 200, San Francisco, California, 94107. Discord, Inc., operates a platform known as Discord, which is a cross-platform voice and text chat application designed specifically for gamers. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), (b)(1)(A), and (c)(1)(A) to require Discord to disclose to the government copies of the information (including the content of communications) further described in Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Richmond, Virginia, Field Office, Charlottesville Resident Agency. I have been employed with the FBI since November 2017. I investigate criminal violations relating to

child exploitation, including the illegal production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A; enticement of minors to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b); and travel with intent to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2423(a). I have reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media. I also have experience in interviewing and in interrogation techniques, arrest procedures, the execution of searches, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of computer equipment, electronics, cloud-storage accounts, and social media accounts. Prior to becoming a Special Agent, I was assigned to the Atlanta, Georgia, FBI Office's crimes against children unit, providing tactical and administrative assistance for child sexual exploitation investigations, which included providing support during the execution of search warrants.

3.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that information associated with the SUBJECT ACCOUNT constitutes evidence, fruits, and instrumentalities of the following offenses: production of child pornography, in violation of 18 U.S.C. § 2251; distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2252A; online enticement, in violation of 18 U.S.C. § 2422; and travel with intent to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2423(a). This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information provided is based upon my personal knowledge and that of other sworn law enforcement officers participating in this investigation.

## TECHNICAL TERMS

4. The following definitions apply to this affidavit:

5. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

6. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

7. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

8. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

9. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital

3

image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

10.     The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

11.     A "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

12.     "Discord" is a free communications app that allows its users to share voice, video, and text chat with persons on the Internet as well as browse and share any website content with those whom the user selects while still within the Discord platform. Unlike other messaging apps, Discord usernames - not phone numbers - are the basis for Discord user accounts. Discord usernames are unique, can never be replicated, and are the only publicly available identifier Discord can use to identify a Discord account to law enforcement. The company cannot identify users using phone numbers, first and last name (display name), or email address. Each unique username has a corresponding unique User ID.

13.     "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.

ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

14.     An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most ISPs control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

15.     "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

## BACKGROUND RELATING TO DISCORD

16.     Discord owns and operates a free, all-in-one voice and text chat application and website of the same name that can be accessed at http://www.discordapp.com. Discord allows its users to establish accounts with Discord, which can then use to communicate with other Discord users. When signing up for a Discord account, the user must agree to Discord's

Terms of Service.[1] Discord's Terms of Service that were in effect in February 2023 required users to abide by Discord's "Community Guidelines," which were also incorporated into the Terms of Service. These Community Guidelines[2] told users: "Do not organize, promote, or engage in any illegal or dangerous behavior, such as sexual solicitation . . . . These activities are likely to get you kicked off Discord, and may get your reported to law enforcement." They also warned users: "Do not sexualize children in any way. You cannot share content or links which depict children in a pornographic, sexually suggestive, or violent manner . . . ."

17.   Discord asks users to provide basic contact information to Discord, either during the registration process or thereafter. The information may include the user's full name, birth date, contact email addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Discord also assigns a user identification number to each account.

18.   Discord users can exchange private messages on Discord with other users as well as participate in chat room discussions, and voice chat.

19.   Discord may also retain IP logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Discord, including information about the type of action, the date and time of the action, and the user

---

[1] Discord updated its Terms of Service on February 24, 2023, effective March 27, 2023. The Terms of Service that were in effect in February 2023 may be accessed online at https://discord.com/terms/terms-of-service-march-2022.

[2] Discord updated its Community Guidelines on February 24, 2023, effective March 27, 2023. The Community Guidelines that were in effect in February 2023 may be accessed online at https://discord.com/terms/guidelines-march-2022.

6

ID and IP address associated with the action. For example, if a user views a Discord profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so.

20. Social networking providers like Discord typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Discord users may communicate directly with Discord about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Discord typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

21. The computers or servers of Discord are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Discord, such as account access information, transaction information, and account activation.

22. Generally, when served with a search warrant for electronic communications, an electronic communications service provider (ECSP), such as Discord, will send the contents of the specified account(s) to the investigating agency, usually on a CD or DVD, for the investigator to review. The ECSP can copy the contents of the entire account because that is within their expertise. Though the ECSP affirms that the records relate to the specified email account, the provider does not and will not undertake the examination of the contents of an account to make a determination as to what is relevant or irrelevant to the investigation.

Generally, and in this case particularly, the provider is not familiar with the investigation and is not in a position to identify the victim(s) or subject(s) of the investigation.

23. The provider is neither qualified nor trained to search the account information as would a law enforcement officer. Only a trained agent, familiar with the statutory violations and facts of the case, can determine what items should or should not be seized. For these reasons, I request that the provider disclose the records listed in Attachment B, for the account(s) listed in Attachment A.

## CASE BACKGROUND AND PROBABLE CAUSE

24. On February 24, 2023, at approximately 10:25 PM, the FBI received a call from the Lynchburg Police Department notifying the FBI that the Lynchburg Communications Center received a report that Derrick Loi (LOI), who the caller reported to be 28 years old, had traveled from the state of New York for the purpose of engaging in sexual intercourse with a 14-year-old female (hereinafter "V1"). The complainant stated that LOI was waiting to meet V1 on McVeigh Road in Lynchburg, Virginia, which is within the Western District of Virginia. LOI told V1 he would take her to a hotel to have sex. Officers from the Lynchburg Police Department responded to V1's address to make contact with her while additional officers responded to McVeigh Rd, where LOI was parked. LOI was initially identified by a photograph provided to the officers by V1 and later was fully identified as 26-year-old Derrick LOI of Lakeville, NY. Officers placed him into investigative detention.

25. After confirming LOI made a hotel reservation in the Lynchburg area, the Lynchburg police transported LOI to the Lynchburg Police Department, where an interview of LOI was conducted. During the interview, LOI confirmed he had driven from New York

to Lynchburg, Virginia, to meet someone he had been speaking to online. LOI believed he was talking to someone named "Katie." LOI told the interviewing officer that his Discord usernames were "LPKensei" and "Callthevoid." LOI stated he and "Katie" discussed "hooking up," but he denied knowing how old she was. LOI stated he had requested and received photographs of a "lewd nature" from "Katie." LOI stated he and "Katie" used the Discord chat, video, and audio features.

26. V1's parents gave law enforcement a laptop utilized by V1 and further provided law enforcement consent to conduct a forensic examination of the laptop. An examination of the laptop gave the FBI access to V1's Discord account.

27. In reviewing V1's Discord account with the username "katieee#5383," I observed an exchange of messages between V1 and the SUBJECT ACCOUNT dated February 14, 2023, through February 24, 2023. In the early conversation between LOI (using the SUBJECT ACCOUNT) and V1, on February 14, 2023, V1 told LOI that she was fourteen years old. Throughout the conversation, LOI repeatedly requested pornographic images from V1 and discussed traveling from New York to Lynchburg, Virginia, to engage in sexual intercourse with V1.

28. On February 14, 2023, LOI stated "Ooh I can't wait to try out your kiddie holes… ." LOI suggested he could be her "sugar daddy" and pay her weekly. LOI provided money to V1 in exchange for child pornography. On February 14, 2023, LOI asked for a "pussy spread" photograph and V1 sent an image depicting herself bent over, using her hands to spread and expose her genitals and anus. Based on my training and experience, this photograph constitutes child pornography as that term is defined under 18 U.S.C. § 2256.

29. During the conversation, LOI discussed taking V1's virginity and discussed V1 taking birth control. LOI told V1 he was bringing vodka and sex toys when he came down to Lynchburg to meet her and sent V1 photographs of those items. LOI discussed with V1 the possibility of staying in a hotel overnight and questioned V1 about her parents' response if she did not return home. LOI instructed V1 to tell her parents she was staying with a friend the night she planned to meet him. LOI also asked V1 what she thought about age of consent laws and LOI stated "13 sounds like a good age." On February 22, 2023, LOI told V1 he was going to travel down to Virginia that weekend. LOI asked V1 if they could film their sexual encounter when he traveled down to have sex with her and continued by stating "…hopefully I get good footage."

30. On February 24, 2023, LOI instructed V1 to "take a pic of ur pussy rn." V1 responded by sending an image depicting herself nude, exposing her genitals. Based on my training and experience, this photograph constitutes child pornography as that term is defined under 18 U.S.C. § 2256.

31. On February 24, 2023, LOI told V1 "I'm so excited to fuck you" and then told V1 when he initially arrived at McVeigh Road, which was the location where they had agreed to meet. He then left to check into the hotel before returning to McVeigh Road. The final Discord message from LOI was received at approximately 9:41 PM.

32. FBI investigators arranged for a specially trained Child and Adolescent Forensic Interviewer (CAFI) to conduct a forensic interview of V1, which occurred on March 28, 2023. V1's memory of events as told to the CAFI corroborated the chat messages and photographs that I reviewed in her Discord account. When shown the Discord messages during the CAFI interview, V1 confirmed that these messages were exchanged between

herself and LOI. VI further identified herself in the images of child pornography that she sent to LOI.

33. On or about March 15, 2023, a preservation letter for the SUBJECT ACCOUNT was provided to Discord. On March 16, 2023, an administrative subpoena was served upon Discord. On or about March 18, 2023, subpoena results were obtained from Discord for the SUBJECT ACCOUNT. The subpoena results contained an email address and phone number associated with the SUBJECT ACCOUNT but did not contain any additional identifying subscriber information. I conducted open-source queries for the telephone number associated with the SUBJECT ACCOUNT, which revealed that the phone number belongs to LOI.

34. The subpoena results contained IP addresses used to access the SUBJECT ACCOUNT. After utilizing IP search tools for ISPs based on IP address, it was determined that the IP addresses used to access the SUBJECT ACCOUNT from approximately January 29, 2023, through February 24, 2023, all resolved to New York. These access records are consistent with LOI's known location prior to February 24, 2023.

35. The facts as outlined above provide me with a reasonable belief that LOI was the user of Discord username "Callduvide#1772," and that he, through his Discord account, produced, possessed, and received child pornography by means of the Internet and traveled to the Western District of Virginia with the intent to engage in unlawful sexual activity with a minor residing in the Western District of Virginia.

## CONCLUSION

36. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT ACCOUNT described in Attachment A to seek the items described in Attachment B.

**Respectfully submitted,**

*[signature]*

Mary Echols
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on April  18  , 2023.

*Robert S. Ballou*
ROBERT S. BALLOU
UNITED STATES DISTRICT JUDGE